Slip Op. 14-110

UNITED STATES COURT OF INTERNATIONAL TRADE

—————————————————— :
                                             :
STREETSURFING LLC,                           :
                                             :
            Plaintiff,                       :       Before: Richard K. Eaton, Senior Judge
                                             :
                       v.                    :       Court No. 09-00136
                                             :
UNITED STATES,                               :
                                             :
            Defendant.                       :
                                             :
——————————————————:

**OPINION**

[Defendant's motion for summary judgment is granted; plaintiff's cross-motion for summary judgment is denied.]

Dated: September 22, 2014

   *Russell A. Semmel* and *Elyssa Emsellem*, Neville Peterson LLP, of New York, NY, argued for plaintiff.  With them on the brief were *John M. Peterson* and *Maria E. Celis*.

   *Marcella Powell*, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, of New York, NY, argued for defendant.  With her on the brief were *Stuart F. Delery*, Assistant Attorney General, *Barbara S. Williams*, Attorney in Charge, International Trade Field Office, and *Amy M. Rubin*, Acting Assistant Director, International Trade Field Office.  Of counsel on the brief was *Paula S. Smith*, Office of Assistant Chief Counsel, International Trade Litigation, United States Customs and Border Protection, of New York, NY.

            EATON, Senior Judge: This matter is before the court on the cross-motions for

summary judgment of plaintiff Streetsurfing LLC ("plaintiff" or "Streetsurfing") and defendant

United States ("defendant").  Def.'s Mot. for Summ. J. (ECF Dkt. No. 52); Pl.'s Cross Mot. for

Summ. J. (ECF Dkt. No. 71) ("Pl.'s Cross Mot.").  Jurisdiction lies pursuant to 28 U.S.C. §

1581(a) (2006).  At issue is the proper classification of Streetsurfing's waveboards, the "Ripple

Board" and "The Wave" (collectively, "merchandise" or "waveboards").

For the reasons set forth below, defendant's motion for summary judgment is granted,

plaintiff's cross-motion for summary judgment is denied, and the court finds that plaintiff's

waveboards are properly classified under the Harmonized Tariff Schedule of the United States

("HTSUS")[1] subheading 9506.99.60.

## BACKGROUND

The facts described below have been taken from the parties' USCIT Rule 56(h)

statements.  Citation to the record is provided where a fact, although not admitted in the parties'

papers, is uncontroverted by record evidence.

The merchandise at issue is the "Ripple Board" and "The Wave," which are waveboards[2]

manufactured by Streetsurfing.[3]  Def.'s Statement of Undisputed Material Facts ¶¶

---

[1]        "The HTSUS scheme is organized by headings, each of which has one or more
subheadings; the headings set forth general categories of merchandise, and the subheadings
provide a more particularized segregation of the goods within each category."  *Wilton Indus.,
Inc. v. United States*, 741 F.3d 1263, 1266 (Fed. Cir. 2013).

[2]        "Waveboards" are Streetsurfing's brand of "casterboards."  Def.'s Statement of
Undisputed Material Facts ¶ 2 (ECF Dkt. No. 52).  "Casterboards" are "a two-wheeled, human-
powered land vehicle."  Ex. A, at 1, Mem. of Streetsurfing LLC in Supp. of Pl.'s Cross-mot. for
Summ. J. and Resp. in Opp'n to Def.'s Mot. for Summ. J. (ECF Dkt. No. 71) ("Pl.'s Br.").  They
possess "[t]wo narrow platforms known as 'decks[,]' [and] are joined by a 'torsion bar[,]' which
consists of a metal beam, usually coated by rubber, that houses a strong spring."  Ex. A, at 1,
Pl.'s Br.  Casterboards also use "[o]ne polyurethane wheel [that] is connected to each deck with a
caster so that . . . each wheel can steer independently, and each caster has a steering axis that is
tilted about 30° back from the vertical."  Ex. A, at 1, Pl.'s Br; *see also* Appendix *infra*.

[3]        The Ripple Board and The Wave are described by the parties as identical to one
another in terms of their components and the ride offered to their users.  *See* Def.'s Statement of
Undisputed Material Facts ¶¶ 5, 6 (ECF Dkt. No. 52) ("The 'Wave Ripple Board' model offers
the same ride as The Wave, but it is for younger riders.").  The parties, however, have provided
the court only with a sample of The Wave.  *See* Appendix *infra*.

Case 1:09-cv-00136-RKE   Document 98   Filed 09/22/14   Page 3 of 25

Court No. 09-00136                                                          Page 3

2, 3 (ECF Dkt. No. 52) ("Def.'s Statement").  Streetsurfing's patent for the waveboards describes

the merchandise as a "*skateboard* having a front board, [a] rear board, a connecting element

which interconnects the front board and the rear board in a spaced relationship, [and] at least one

direction-caster[4] mounted on the underside of each of the front board and the rear board."  Def.'s

Statement ¶ 17 (emphasis added) (internal quotation marks omitted).  Unlike a traditional

skateboard, however, the waveboards possess two wheels and two flexible platforms that can

partially rotate, rather than four wheels and a single inflexible platform.  *See* Appendix *infra*;

Def.'s Statement ¶ 6.  The waveboards are propelled "by the rider pushing his back foot forward

or back, or moving the whole board in a transverse wave motion.  This form of propulsion allows

the rider to move uphill as well as downhill."  Def.'s Statement ¶ 7.  Moreover, "[o]nce on the

board, and riding, . . . the rider [can] turn or even propel the board forward without removing his

or her feet from the board."  Ex. A, at 2, Mem. of Streetsurfing LLC in Supp. of Pl.'s Cross-mot.

for Summ. J. and Resp. in Opp'n to Def.'s Mot. for Summ. J. (ECF Dkt. No. 71) ("Pl.'s Br.").

Thus, to ride the waveboard, users must coordinate their balance, steering, and propulsion all at

once.  Def.'s Statement ¶ 24.

After importation, Streetsurfing, which "describes itself as a sporting goods product and

lifestyle company," sells its waveboards to large retail stores (e.g., Walmart), toy stores (e.g.,

Toys "R" Us), sporting goods stores (e.g., Dick's Sporting Goods and Modell's Sporting Goods),

and online retailers (e.g., Amazon.com, Shopping.com, Sportchalet.com, and Getboards.com).

Def.'s Statement ¶ 8 (internal quotation marks omitted); Ex. G, at 8, Pl.'s Resp. to Def.'s First

---

[4]      A "caster" is a "small wheel on a swivel, attached under a piece of furniture or
other heavy object to make it easier to move."  AMERICAN HERITAGE DICTIONARY OF THE
ENGLISH LANGUAGE 290 (4th ed. 2000).  Here, the casters are one-directional because, unlike a
traditional skateboard, the waveboards can only be propelled in the direction of the board's nose.

Interrogatories and Request for Production of Documents and Things (ECF Dkt. No. 52-4).  In

toy stores, such as Toys "R" Us, the waveboards are sold in the "wheeled sporting goods aisles"

next to skateboards.  Ex. B, at 8, Report of Findings Related to the Case by Robert F. Valerio

(ECF Dkt. No. 52-1).  Plaintiff markets its waveboards as "a new sport that combines the natural

fluidity of surfing with the smooth maneuverability of snowboarding and skating into one new

action sport known as Street Surfing."  Def.'s Statement ¶ 10 (internal quotation marks omitted).

Streetsurfing LLC, the importer of record of the merchandise in question, entered twenty-

six shipments of waveboards between June 2007 and September 2007 at the Port of Los Angeles,

California.  Def.'s Statement ¶ 1; Summons at 3–4 (ECF Dkt. No. 1).  Upon liquidation[5] of the

entries, the U.S. Customs and Border Protection Agency ("Customs") classified the waveboards

under HTSUS 9506.99.60,[6] which covers "Articles and equipment for general physical exercise,

gymnastics, athletics, other sports (including table-tennis) or outdoor games, not specified or

included elsewhere in this chapter; swimming pools and wading pools; parts and accessories

thereof: Other: Other: Other," at 4% *ad valorem*.  Pl.'s Statement of Material Facts as to Which

No Genuine Issue Exists ¶ 3 (ECF Dkt. No. 71) ("Pl.'s Statement").  The Explanatory Notes to

the Harmonized Commodity Description and Coding System, 4th ed., 95.06 (2007)

("Explanatory Notes"), which "are generally indicative of the proper interpretation of the various

HTSUS provisions," expressly list skateboards as covered by HTSUS Heading 9506.  *N. Am.*

---

[5]      "Liquidation means the final computation or ascertainment of duties on entries for consumption or drawback entries."  19 C.F.R. § 159.1 (2012); *see also Shinyei Corp. of Am. v. United States*, 524 F.3d 1274, 1276–77 (Fed. Cir. 2008).

[6]      Plaintiff's Summons and Cross Motion for Summary Judgment appear to misidentify Customs' classification of the merchandise as under HTSUS 9506.91.00.  *See* Summons 2; Pl.'s Cross Mot. at 1.  The record, however, demonstrates clearly that plaintiff's waveboards were classified under HTSUS 9506.99.60.

*Processing Co. v. United States*, 236 F.3d 695, 698 (Fed. Cir. 2001) (citation omitted); Explanatory Notes 95.06.

Plaintiff submitted a timely protest of Customs' tariff classification on October 29, 2008 (Protest No. 2704-08-103793), which was subsequently denied by Customs.  *See* Summons 1. After paying all required duties, plaintiff commenced this action, claiming that Customs erred in its classification of the merchandise as "sports equipment" under HTSUS 9506.99.60.  *See* Pl.'s Br. 17.  Rather, plaintiff urges that the merchandise should have been classified as "other wheeled toys," and thus, should be reliquidated under HTSUS 9503 which covers "Tricycles, scooters, pedal cars and similar wheeled toys; dolls' carriages; dolls, other toys; reduced-scale ('scale') models and similar recreational models, working or not; puzzles of all kinds; parts and accessories thereof."  *See* Pl.'s Br. 7–8.  Heading 9503 is duty-free.


## STANDARD OF REVIEW

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  USCIT R. 56(a); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986).  "When both parties move for summary judgment, the court must evaluate each motion on its own merits, resolving all reasonable inferences against the party whose motion is under consideration."  *JVC Co. of Am., Div. of US JVC Corp. v. United States*, 234 F.3d 1348, 1351 (Fed. Cir. 2000) (citing *McKay v. United States*, 199 F.3d 1376, 1380 (Fed. Cir. 1999)).  In the context of a classification action, "summary judgment is appropriate when there is no genuine dispute as to the underlying factual issue of exactly what the merchandise is."  *Bausch & Lomb, Inc. v. United States*, 148 F.3d 1363, 1365 (Fed. Cir. 1998) (citations omitted).

## DISCUSSION

### I.   LEGAL FRAMEWORK

The objective in a classification case is to determine the correct tariff provision for the

subject merchandise.  *See Jarvis Clark Co. v. United States*, 733 F.2d 873, 878 (Fed. Cir. 1984).

This Court reviews Customs' classification decisions *de novo*.  *Sony Elecs., Inc. v. United States*,

37 CIT __, __, Slip Op. 13-153, at 4 (2013) (citing *CamelBak Prods., LLC v. United States*, 649

F.3d 1361, 1364 (Fed. Cir. 2011)).  In reaching its conclusions, the Court engages in a two-step

inquiry: first, it "must construe the meaning of terms in a given tariff provision."  *Deckers Corp.*

*v. United States*, 752 F.3d 949, 954 (Fed. Cir. 2014) (citing *Orlando Food Corp. v. United*

*States*, 140 F.3d 1437, 1439 (Fed. Cir. 1998)).  "Second, the trial court must determine if the

merchandise at issue falls within the tariff provision that the court just construed."  *Id.* (citing

*Orlando Food*, 140 F.3d at 1439).  "The first step is a question of law; the second is a question of

fact."  *Dependable Packaging Solutions, Inc. v. United States*, 37 CIT __, __, Slip Op. 13-23, at

7 (2013) (citing *Pomeroy Collection, Ltd. v. United States*, 35 CIT __, __, 783 F. Supp. 2d 1257,

1259 (2011)).

The General Rules of Interpretation ("GRI") "govern classifications of imported goods

under [the] HTSUS and [are] appl[ied] in numerical order."  *CamelBak*, 649 F.3d at 1364 (citing

*BASF Corp. v. United States*, 482 F.3d 1324, 1325–26 (Fed. Cir. 2007)).  "Under GRI 1, the

court must determine the appropriate classification 'according to the terms of the headings and

any relative section or chapter notes.'"  *Millenium Lumber Distribution Ltd. v. United States*, 558

F.3d 1326, 1328–29 (Fed. Cir. 2009) (quoting GRI 1, HTSUS).  Only after a court has

"determin[ed] that a product is classifiable under the heading[, may it] look to [a] subheading[]."

*Orlando Food*, 140 F.3d at 1440 (citation omitted).  "In other words, tariff headings are

construed without reference to their subheadings.  Accordingly, a court should not look to

subheadings to either limit or broaden the scope of a heading." *Dependable Packaging*, 37 CIT

at __, Slip Op. 13-23, at 7 (citing *Orlando Food*, 140 F.3d at 1440).

   This Court is further directed to interpret "[t]he terms of the HTSUS . . . according to

their common commercial meanings." *Millenium Lumber*, 558 F.3d at 1329 (citing *Len-Ron*

*Mfg. Co. v. United States*, 334 F.3d 1304, 1309 (Fed. Cir. 2003)).  In doing so, "the court may

rely on its own understanding of the term as well as upon lexicographic and scientific

authorities." *Len-Ron*, 334 F.3d at 1309 (citing *Mita Copystar Am. v. United States*, 21 F.3d

1079, 1082 (Fed. Cir. 1994)).

   As noted, "[t]he court may also refer to the Explanatory Notes accompanying a tariff

subheading." *Id.* (citing *Mita*, 21 F.3d at 1082).  Although the Explanatory Notes do "not

constitute controlling legislative history[, they] are intended to clarify the scope of HTSUS

subheadings and to offer guidance in interpreting" the HTSUS.  *Mita*, 21 F.3d at 1082 (citing

*Lynteq, Inc. v. United States*, 976 F.2d 693, 696 (Fed. Cir. 1992)).  Therefore, although "not

legally binding or dispositive," the Explanatory Notes "may be consulted for guidance and are

generally indicative of the proper interpretation of the various HTSUS provisions." *N. Am.*

*Processing*, 236 F.3d at 698 (citation omitted).


II.   **CLASSIFICATION UNDER HEADINGS 9503 AND 9506**

   The court finds, and the parties agree, that the waveboards should be classified under

HTSUS chapter 95, which covers "Toys, games and sports equipment; parts and accessories

thereof."  The parties' dispute is under which specific heading the merchandise should be

classified.  Defendant maintains that the appropriate heading for classification of the

merchandise is HTSUS 9506.99.60, while plaintiff claims that the proper heading is 9503.00.00.

Mem. in Supp. of Def.'s Mot. for Summ. J. 3 (ECF Dkt. No. 52) ("Def.'s Br."); Pl.'s Br. 6.  The

parties are correct that plaintiff's proposed heading, 9503.00.00, is a principal use provision,[7]

while the heading under which Customs classified the merchandise, 9506.99.60, is a residual

provision.  *Processed Plastics Co. v. United States*, 473 F.3d 1164, 1170 (Fed. Cir. 2006);

*Rollerblade, Inc. v. United States*, 282 F.3d 1349, 1351, 1354 (Fed. Cir. 2002); Def.'s Reply

Mem. in Further Supp. of its Mot. for Summ. J. and in Opp'n to Pl.'s Cross-mot. for Summ. J. 2

(ECF Dkt. No. 87); Reply of Streetsurfing LLC in Supp. of Pl.'s Cross-mot. for Summ. J. 1–2

(ECF Dkt. No. 93).  Thus, if the merchandise is *prima facie* classifiable under the more specific

heading of 9503, HTSUS, urged by plaintiff, it cannot be classified under Heading 9506,

HTSUS.  *See BASF Corp.*, 482 F.3d at 1326.

---

[7]        Principal use provisions are governed by HTSUS Additional U.S. Rule of
Interpretation 1, which states, in part, that "a tariff classification controlled by use (other than
actual use) is to be determined in accordance with the use in the United States at, or immediately
prior to, the date of importation, of goods of that class or kind to which the imported goods
belong, and the controlling use is the principal use." ARI 1, HTSUS (2012).  "The rule 'call[s]
for a determination as to the group of goods that are commercially fungible with the imported
goods.'"  *BenQ Am. Corp. v. United States*, 646 F.3d 1371, 1380 (Fed. Cir. 2011) (alteration in
original) (quoting *Primal Lite, Inc. v. United States*, 182 F.3d 1362, 1365 (Fed. Cir. 1999)).  The
term "'[p]rincipal use' in this context has been defined as the use 'which exceeds any other
*single* use.'"  *Aromont USA, Inc. v. United States*, 671 F.3d 1310, 1312 (Fed. Cir. 2012) (quoting
*Lenox Collections v. United States*, 20 CIT 194, 196 (1996)).  "[T]he purpose of 'principal use'
provisions in the HTSUS is to classify particular merchandise according to the ordinary use of
such merchandise, even though particular imported goods may be put to some atypical use."
*BenQ Am. Corp.*, 646 F.3d at 1380 (citing *Primal Lite*, 182 F.3d at 1364).

III.    THE WAVEBOARDS ARE NOT PROPERLY CLASSIFIABLE UNDER HEADING 9503 AS
        WHEELED TOYS

   A.  Construction of Heading 9503

       Plaintiff's preferred HTSUS Heading 9503 covers "Tricycles, scooters, pedal cars and

similar wheeled toys; dolls' carriages; dolls, other toys; reduced-scale ('scale') models and

similar recreational models, working or not; puzzles of all kinds; parts and accessories thereof."

The Explanatory Notes describe wheeled toys as

>       articles . . . usually designed for propulsion either by means of pedals, hand levers
>       or other simple devices which transmit power to the wheels through a chain or
>       rod, or, as in the case of certain scooters, by direct pressure of a person's foot
>       against the ground.  Other types of wheeled toys may be simply drawn or pushed
>       by another person or driven by a motor.

Explanatory Notes 95.03.  Further, the exemplars identified in the Explanatory Note to Heading

9503 include the following items:

>       (1) Children's tricycles and the like, but excluding bicycles of heading 87.12.
>
>       (2) Two- or three-wheeled scooters designed to be ridden by children, as well as
>       youngsters and adults, with an adjustable or non-adjustable steering column and
>       small solid or inflatable wheels.  They are sometimes equipped with a bicycle-
>       type handle-bar, a hand brake or a foot brake on the rear wheel.
>
>       (3) Pedal- or hand-propelled wheeled toys in the form of animals.
>
>       (4) Pedal cars, frequently in the form of miniature sports cars, jeeps, lorries, etc.
>
>       (5) Wheeled toys, propelled by hand levers.
>
>       (6) Other wheeled toys (with no mechanical transmission system) which are
>       designed to be drawn or pushed, and are large enough for children to ride.
>
>       (7) Children's cars powered by a motor.

Explanatory Notes 95.03.  As noted, although the Explanatory Notes "are not legally binding or

dispositive, they may be consulted for guidance and are generally indicative of the proper

interpretation of the various HTSUS provisions." *N. Am. Processing*, 236 F.3d at 698 (citation

omitted).

Classification as a toy under HTSUS Heading 9503 requires that the article be principally

used as a toy.  *See StoreWALL, LLC v. United States*, 644 F.3d 1358, 1365–66 (Fed.

Cir. 2011).  Toys have been found to include "'articles whose principal use is amusement,

diversion, or play, rather than practicality.'"  *Processed Plastics*, 473 F.3d at 1169, 1170 (quoting

*Minnetonka Brands, Inc. v. United States*, 24 CIT 645, 651, 110 F. Supp. 2d 1020, 1027 (2000))

("We agree with the standard adopted in *Minnetonka* to determine whether merchandise should

be classified as a toy.").

Plaintiff insists that its waveboards are specifically covered by Heading 9503 because

they are wheeled toys principally used for amusement.  Pl.'s Br. 10.  Thus, plaintiff reasons that,

because the merchandise is principally used for amusement, it is *prima facie* classifiable only

under Heading 9503 and cannot fall under the less specific heading, 9506.

While the court is mindful that in *Processed Plastics* the Federal Circuit found that

"wheeled toys" under HTSUS Heading 9503 must be principally used for amusement, the

Explanatory Note accompanying this heading makes clear that the provision is narrower than

plaintiff claims.  That is, Heading 9503 does not cover *every* item with wheels that is principally

used for amusement, as plaintiff would have the court hold.  Rather, the Explanatory Notes

indicate that, in addition to being principally used for amusement, a wheeled toy properly

classifiable under HTSUS Heading 9503 is also characterized by other common features.

For example, the exemplars listed in the Explanatory Notes, such as children's tricycles,

pedal cars, and wheeled cars designed to be drawn or pushed, and large enough for children to

ride, are all items that require no training prior to their use and involve no meaningful risk of

injury.  Rather, these items can be safely used by a child, with minimal supervision, and without prior instruction.

In addition, items, such as pedal cars and wheeled toys designed to be drawn or pushed with a child riding inside, involve no development or practice of individual skills in order for them to be used to their maximum capacity.  Nor do these items afford a user a reasonable degree of exercise or physical activity.  That is, there is no minimum degree of skill required in order to fully use a wheeled toy, and wheeled toys do not provide notable exercise or require athletic ability.

Further, as noted, all articles listed as wheeled toys are propelled "by means of pedals, hand levers or other simple devices which transmit power to the wheels through a chain or rod, . . . by direct pressure of a person's foot against the ground," or by "simply [being] drawn or pushed by another person or driven by a motor."  Explanatory Notes 95.03.  Thus, wheeled toys all conform to a general design, characterized by the support of an assistive device, such as one or more seats, additional wheels, hand levers, handle bars, pedals, or breaks.

Accordingly, in addition to being an item with wheels that is used principally for amusement, a wheeled toy under Heading 9503 is also characterized by the following features: (1) the absence of a training requirement prior to its use; (2) the absence of a meaningful risk of injury involved in its use; (3) the lack of acquired skill to fully utilize the item; (4) the lack of exercise or athletic aspect in the item's use; and (5) the presence of an assistive device.

**B.  Heading 9503 Does Not Cover the Waveboards**

      *1.  Need for Training*

Both parties agree that riding the waveboard requires the coordination of a user's balance, steering, and propulsion in unison.  Def.'s Statement ¶ 24.  As a result, the waveboards are packaged with a tutorial video that demonstrates how to safely ride the merchandise, and similar instructional material is also available on Streetsurfing's website.  *See* Ex. A, Instructional DVD for the Sample of The Wave ("Instructional DVD"); Ex. G, at 23, Pl.'s Resp. to Def.'s First Interrogatories and Request for Production of Documents and Things.  In addition, Streetsurfing employed professional instructors to "visit[] thousands of schools and t[each] millions of students how to ride" its waveboards.   Def.'s Statement ¶ 29 (internal quotation marks omitted).  Thus, it is apparent that, unlike wheeled toys, riding waveboards require more than merely stepping onto the device and setting off.  That the waveboards require a certain level of training prior to their use separates them from wheeled toys.

Thus, the presence of this additional feature in the use of the waveboards, the requirement of training prior to use, weighs against classifying the merchandise under Heading 9503 as wheeled toys.

      *2.  Meaningful Risk of Injury*

Another distinctive characteristic of a wheeled toy under HTSUS Heading 9503 is that the item's use does not involve any meaningful risk of injury.  Here, as evidenced by the product's labeling and other record evidence, a waveboard's use carries a meaningful risk of injury that is lacking with the wheeled toy exemplars of HTSUS Heading 9503.  According to plaintiff, its waveboards are prohibited in over ninety percent of the skate parks in the United

States "because they are dangerous in the parks."  Pl.'s Statement ¶ 8 (internal quotation marks

omitted).  Moreover, The Wave itself and the box in which it is packaged and sold state that the

merchandise contains a safety manual that should be read prior to its use, that protective gear

should be worn at all times, and that adult supervision is required.  *See* Ex. A, Sample of The

Wave ("WARNING[:] . . . Children require competent adult supervision."); Ex. A, Box of the

Sample of The Wave ("READ AND UNDERSTAND THE ENCLOSED SAFETY MANUAL

BEFORE RIDING.  ALWAYS WEAR SAFETY EQUIPMENT SUCH AS A HELMET, KNEE

PADS, AND ELBOW PADS WHILE RIDING. . . . COMPETENT ADULT SUPERVISION

RECOMMENDED.").

Hence, unlike the wheeled toy items listed by the Explanatory Notes as classifiable under

HTSUS Heading 9503, the waveboards do involve a meaningful risk of injury to users, therefore

further indicating that the merchandise falls outside the realm of what constitutes a wheeled toy.


3.  *Skill*

In addition to possessing wheels and being principally used for amusement, the wheeled

toy examples found in the Explanatory Notes require no acquisition of skill by their riders in

order to get the maximum use from the toys.  It is clear to the court that the waveboards do not

share this quality, and to the contrary, require that a user acquire a certain level of skill to fully

use the merchandise.  Therefore, as with a skateboard, users need considerable skill and

experience in order to develop their technique and master the use of the waveboards in order to

be able to perform "tricks" or "stunts."  *See* Ex. A, Instructional DVD; Def.'s Statement ¶ 30.

Thus, record evidence demonstrates that the waveboards fail to meet this additional

indicator of wheeled toy status: that users need not develop a degree of skill to use, and take full

advantage of, the waveboards, further showing that classification of the merchandise under

HTSUS Heading 9503 as wheeled toys is improper.


        *4. Exercise*

        As to exercise, the exemplars in the Explanatory Note to HTSUS Heading 9503, such as

pedal cars, children's motor cars, wheeled toys propelled by hand levers, or wheeled toys

designed to be drawn or pushed, and large enough for children to ride, do not provide their user

with a workout.  The waveboards' users, on the other hand, get "good exercise," working their

"lower muscles, . . . the stomach and [their] legs."  Def.'s Statement ¶¶ 20, 21, 22 (internal

quotation marks omitted).  Indeed, plaintiff introduced its waveboards to thousands of schools as

part of the schools' physical education programs, because the waveboards are "a physical

activity" teaching students "a new skill that works on core stability utilizing balance, weight

transfer[,] and movement through space."  Def.'s Statement ¶¶ 28, 29.

        Because the waveboards afford users a reasonable degree of exercise or physical activity,

classification as a wheeled toy under HTSUS Heading 9503 is not appropriate.


        *5. Design*

        Another feature that characterizes wheeled toys is their common design.  Specifically,

those items classified under Heading 9503 by the Explanatory Notes all include the presence of

an assistive device.  That the waveboards fail to conform to this common design feature further

supports defendant's claim that plaintiff's waveboards cannot be classified as wheeled toys under

Heading 9503.

As previously discussed, the Explanatory Notes describe wheeled toys under HTSUS

Heading 9503 as

> articles . . . usually designed for propulsion either by means of pedals, hand levers
> or other simple devices which transmit power to the wheels through a chain or
> rod, or, as in the case of certain scooters, by direct pressure of a person's foot
> against the ground.  Other types of wheeled toys may be simply drawn or pushed
> by another person or driven by a motor.

Explanatory Notes 95.03.  According to plaintiff, after pushing off with his or her foot, "[t]he

rider on the subject waveboard propels himself by mak[ing] a twisting motion to the left with

respect to the front board, and biases the board to the left, while the rear board biases to the right,

in order to keep the rider steady.  The rider moves forward simply by twisting and releasing the

boards."  Pl.'s Statement ¶ 6.  Unlike wheeled toys, waveboards do not possess pedals, hand

levers, or any other device that transmits power to the wheels.  Rather, the waveboards are

propelled forward by the riders shifting their weight from side to side while maintaining their

balance without the support of an assistive device, such as one or more seats, additional wheels,

hand levers, handle bars, pedals, or brakes, which is present in the exemplars identified by the

Explanatory Notes.

Accordingly, it weighs further against their classification as wheeled toys that plaintiff's

waveboards fail to conform to the design methods presented by the examples found in the

Explanatory Note to Heading 9503.


### 6.  Conclusion

Based on the foregoing, the court finds that the scope of HTSUS Heading 9503 is too

narrow to encompass the waveboards.  Although items with wheels that can provide amusement,

plaintiff's waveboards fail to conform to the other necessary criteria needed for classification as

wheeled toys under Heading 9503.  That is, because plaintiff's waveboards (1) require training

prior to their use, (2) involve a meaningful risk of injury, (3) require that a user develop a degree

of skill, (4) provide the user with considerable exercise, and (5) do not conform to the design of

wheeled toys because they do not employ an assistive device for users, the waveboards lack the

necessary elements for classification as wheeled toys.  Accordingly, the waveboards cannot be

classified as such under HTSUS Heading 9503.


**IV.    THE WAVEBOARDS ARE PROPERLY CLASSIFIABLE UNDER HEADING 9506 AS SPORTS
EQUIPMENT OR ARTICLES FOR GENERAL PHYSICAL EXERCISE OR ATHLETICS**

Because HTSUS Heading 9503 is a principal use provision, it is more specific than

HTSUS Heading 9506, which is a residual provision.  *See BASF Corp.*, 482 F.3d at 1326.  Thus,

were the waveboards *prima facie* classifiable under Heading 9503 as wheeled toys, they would

be precluded from classification under Heading 9506 as sports equipment or articles for general

physical exercise or athletics.  Because, as has been seen, the waveboards are not properly

classifiable under HTSUS Heading 9503, the court turns to defendant's proposed classification.


**A.  Construction of Heading 9506**

HTSUS Heading 9506 encompasses "Articles and equipment for general physical

exercise, gymnastics, athletics, other sports (including table-tennis) or outdoor games, not

specified or included elsewhere in this chapter; swimming pools and wading pools; parts and

accessories thereof."  The heading's accompanying Explanatory Note identifies a number of

items covered by Heading 9506, including snow-skis, water-skis, ice skates, surfboards, roller

skates, and *skateboards*.[8]  Explanatory Notes 95.06.

This Court has held that an activity falls within the meaning of a "sport" when "[i]t

possesses to a meaningful degree the . . . attributes of healthy, challenging[,] and skillful

---

[8]      The complete list of exemplars identified by the Explanatory Note to HTSUS Heading 9506 is as follows:

(B) Requisites for other sports and outdoor games (other than toys presented in sets, or separately, of heading 95.03), e.g.:

(1) Snow-skis and other snow-ski equipment (e.g., ski-fastenings (ski-bindings), ski brakes, ski poles).

(2) Water-skis, surf-boards, sailboards and other water-sport equipment, such as diving stages (platforms), chutes, divers' flippers and respiratory masks of a kind used without oxygen or compressed air bottles, and simple underwater breathing tubes (generally known as 'snorkels') for swimmers or divers.

(3) Golf clubs and other golf equipment, such as golf balls, golf tees.

(4) Articles and equipment for table-tennis (ping-pong), such as tables (with or without legs), bats (paddles), balls and nets.

(5) Tennis, badminton or similar rackets (e.g., squash rackets), whether or not strung.

(6) Balls, other than golf balls and table-tennis balls, such as tennis balls, footballs, rugby balls and similar balls (including bladders and covers for such balls); water polo, basketball and similar valve type balls; cricket balls.

(7) Ice skates and *roller skates*, including skating boots with skates attached.

(8) Sticks and bats for hockey, cricket, lacrosse, etc.; chistera (jai alai scoops); pucks for ice hockey; curling stones.

(9) Nets for various games (tennis, badminton, volleyball, football, basketball, etc.).

(10) Fencing equipment: fencing foils, sabres and rapiers and their parts (e.g., blades, guards, hilts and buttons or stops), etc.

(11) Archery equipment, such as bows, arrows and targets.

(12) Equipment of a kind used in children's playgrounds (e.g., swings, slides, see-saws and giant strides).

(13) Protective equipment for sports or games, e.g., fencing masks and breast plates, elbow and knee pads, cricket pads, shin-guards, ice hockey pants with built-in guards and pads.

(14) Other articles and equipment, such as requisites for deck tennis, quoits or bowls; *skate boards*; racket presses; mallets for polo or croquet; boomerangs; ice axes; clay pigeons and clay pigeon projectors; bobsleighs (bobsleds), luges and similar non-motorised vehicles for sliding on snow or ice.

Explanatory Notes 95.06 (emphasis added).

recreation." *Newman Importing Co. v. United States*, 76 Cust. Ct. 143, 143, 415 F. Supp. 375,

376 (1976).  In *Newman*, the Court rejected the claim "that a sport must involve competition

either between individuals or against the natural elements."  *Id.*  Moreover, "[t]o qualify as

'equipment' for a sport, the good should generally provide 'what is necessary, useful, or

appropriate [for that sport]."  *Lemans Corp. v. United States*, 660 F.3d 1311, 1318 (Fed. Cir.

2011) (alterations in original) (citation omitted) (internal quotation marks omitted).  The parties

agree that the waveboards are the only piece of equipment necessary to engage in "streetsurfing."

*See* Pl.'s Br. 17–18; Def.'s Br. 3.


**B.  The Presence of Organized Competition and Rules for an Activity Is Not Dispositive as to Whether Articles Used to Participate in That Activity Are Classifiable Under Heading 9506**

Plaintiff contends that its waveboards are not sports equipment, and thus, not classifiable

as such under Heading 9506, because waveboarding is not a sport.  Pl.'s Br. 17.  For plaintiff,

because waveboarding is not recognized by the general public as a sport and does not possess

specific rules or involve competition, its merchandise cannot be covered by Heading 9506.  *See*

Pl.'s Br. 22.

This Court's previous holdings make clear that an activity qualifies as a "sport" when it

provides "skillful recreation."  *Newman*, 76 Cust. Ct. at 143, 415 F. Supp. at 376.  In *Newman*,

the Court held that backpacking is a sport and rejected the "contention that a sport must involve

competition either between individuals or against the natural elements."  *Id.*  Rather than

competitiveness, the Court explained that what is indicative of a sport is an activity involving

"the element of enjoyment or recreation arising from the development or practice of individual

skills."  *Id.* at 144, 415 F. Supp. at 376.

By way of contrast, in *Camel Manufacturing Co. v. United States*, this Court found that

"camping out" is not a sport. *Camel Mfg. Co. v. United States*, 12 CIT 426, 427–28, 686 F.

Supp. 912, 913 (1988). In doing so, the Court narrowed the holding in *Newman*, cautioning that

not every activity that contains "a certain degree of challenge and skill . . . [can] be considered a

sport." *Id.* at 427, 686 F. Supp. at 913. The Court explained, however, that the purpose of the

holding in *Newman* was to "prevent[] a superficial standard of interpersonal competition from

becoming the identifying essence of sports." *Id.* at 428, 686 F. Supp. at 914.

Plaintiff's position that its waveboards do not qualify as sporting goods because

"waveboarding" does not possess set rules or regular competition is without merit. This Court's

holdings in *Newman* and *Camel Manufacturing* sensibly found that competition or a set of

organized rules are not essential to the determination of whether an activity is a sport.

Indeed, the exemplars identified in the Explanatory Note to HTSUS Heading 9506

support this conclusion. The presence of listed items, such as children's playground equipment

(e.g., swings, slides, and seesaws), equipment for snorkeling and diving, and ice axes, indicate

that the drafters did not intend to limit the heading's scope to activities that incorporate a

competitive structure, a formal league, or rules. Further, despite the presence of competition in

the use of roller skates (e.g., roller derbies) or skateboards, for example, roller skates and

skateboards are not primarily used in organized competition, nor is the common use of these

items characterized by sets of rules.

It is clear, then, that the scope of Heading 9506 encompasses more than plaintiff claims,

and includes merchandise used for general physical exercise and athletics, in addition to articles

used for organized and competitive sports. Thus, whether "waveboarding" possesses formal

rules or involves organized competition is not only not dispositive to the question of whether the

activity is a sport, but it also is not relevant to the classification of plaintiff's merchandise under

Heading 9506, which also covers articles for general physical exercise or athletics.

Thus, it is evident that whether "waveboarding" is a sport with formal rules or

competition is not determinative of whether plaintiff's waveboards qualify for coverage under

Heading 9506.

### C.  The Waveboards Possess the Necessary Features to Qualify for Coverage Under HTSUS Heading 9506

As noted, the Explanatory Notes are regularly used by this Court to determine the intent

of the drafters with respect to the provisions of the HTSUS.  *See Mita*, 21 F.3d at 1082.  In this

instance, the Explanatory Note accompanying Heading 9506 provides the court with additional

insight as to those items with wheels that are intended to be classified under Heading 9506 as

sporting goods or articles for general physical exercise or athletics.  Because the waveboards

conform to the features that characterize items covered by HTSUS Heading 9506, the heading

encompasses plaintiff's merchandise.

#### 1.  Training

After reviewing the exemplars listed under HTSUS Heading 9506, it is clear that a

common element among those items with wheels listed as sports equipment or articles for

general physical exercise or athletics (e.g., skateboards and roller skates) is that the items' users

require a certain degree of training prior to their use.  Moreover, generally, the non-wheeled

articles listed under the Explanatory Note for Heading 9506, such as snow- and water-ski

equipment, golf clubs, equipment for racket sports, ice skates, and archery and fencing

equipment, all require prior training.[9]  A child or adult user would be unable to employ any one

of these items with meaningful precision or effectiveness without prior instruction.

As has been set out earlier in this opinion, prior training is required in order to ride

waveboards.  Users require prior training and practice to be able to enjoy using the waveboards

in any meaningful capacity, which requires that riders be able to balance themselves on the

board, propel the board forward, and steer the board all at once.  *See* Def.'s Statement ¶¶ 23, 24.

This training requirement indicates that the waveboards qualify as sporting goods or articles for

general physical exercise or athletics under HTSUS Heading 9506.


    *2.  Skill*

A review of the accompanying Explanatory Note for HTSUS Heading 9506 also makes

clear that those items classified under HTSUS 9506 (e.g., water-skis, surfboards, skateboards, ice

skates, tennis rackets, ice hockey equipment, and archery equipment) require that one develop a

degree of skill in order to take full advantage of the products.  Indeed, this observation is

supported by this Court's prior holding in *Newman*.  *See Newman*, 76 Cust. Ct. at 144, 415 F.

Supp. at 376 ("In any event the element of enjoyment or recreation arising from the *development

or practice of individual skills*, different from those involved in routine daily activities, is a better

indication of a sport than competitiveness." (emphasis added)).

As previously discussed, record evidence shows that users must acquire a degree of skill

in order to be proficient in riding the waveboards and take full advantage of the merchandise.

While a rider, with prior training, may be able to use the waveboards in a limited fashion, it is

---

    [9]      The notable exception to this finding is playground equipment, items far removed
from waveboards.

with further practice and the acquisition of a greater degree of skill that users will be able to

expand on the product's uses.  As demonstrated by Streetsurfing's sales literature and

instructional DVD packaged with the merchandise, users with greater skill are able to ride the

waveboards with greater speed and a higher degree of precision, on more uncertain terrain (e.g.,

hills and sidewalks), and may even become proficient enough to perform "tricks" and "stunts"

similar to those performed using a skateboard.  *See* Ex. A, Instructional DVD; Def.'s Statement ¶

30.  Skill is required for a rider to take full advantage of the articles covered by HTSUS Heading

9506, and the presence of this element further favors classification of plaintiff's waveboards

under this heading, as sporting goods or articles for general physical exercise or athletics.


     *3.  Exercise*

     Another common feature exhibited by the exemplars listed by the Explanatory Note for

HTSUS Heading 9506 is that the activities for which the listed items are used afford a user a

reasonable degree of exercise or physical activity.  As noted, record evidence shows that using

the waveboards provides users with a workout, giving them "good exercise," working their

"lower muscles, . . . the stomach and [their] legs."  Def.'s Statement ¶¶ 20, 21, 22 (internal

quotation marks omitted).  The listed exemplars all provide users with meaningful exercise and a

reasonable degree of physical activity, whether it be equipment used for skiing, racket sports,

fencing, water sports and activities, or even children's playground equipment.

     Therefore, because plaintiff's waveboards conform to the additional features that

characterize those items that, according to the Explanatory Notes, are properly classified as

sporting goods or articles for general physical exercise or athletics, the classification of the

waveboards under HTSUS Heading 9506 is favored.

### D.  The Court's Examination of the Merchandise

As this Court and the U.S. Court of Appeals for the Federal Circuit have confirmed, "the merchandise itself is often a potent witness in classification cases." *Simod Am. Corp. v. United States*, 872 F.2d 1572, 1578 (Fed. Cir. 1989) (citation omitted); *see also Dependable Packaging*, 37 CIT at __, Slip Op. 13-23, at 17 (citation omitted); *Lerner N.Y., Inc. v. United States*, 37 CIT __, __, 908 F. Supp. 2d 1313, 1318 (2013) (citation omitted).  Having examined the sample of The Wave supplied by the parties and its accompanying instructional DVD, in the court's view, plaintiff's waveboards are akin to skateboards.  *See* Appendix *infra*.  Although there are certain minor distinguishable characteristics between the items, plaintiff's waveboards are undeniably almost visually identical, as well as duplicative in their components, physical characteristics, and use as skateboards.  As noted, a skateboard is listed by the Explanatory Notes as an example of an item that is properly classified as sports equipment or an article for general physical exercise or athletics under HTSUS Heading 9506.

### E.  Customs Properly Classified the Merchandise Under HTSUS Heading 9506

Based on the foregoing, Customs properly classified the waveboards under HTSUS 9506.99.60.  Despite plaintiff's arguments to the contrary, this Court has held that the presence of organized competition and specific rules is not determinative of whether an activity qualifies as a sport, nor is it determinative of whether the article qualifies for coverage under Heading 9506.  That is, the argument that "waveboarding" does not involve competition or possess rules does not aid plaintiff's case because Heading 9506 is much broader than plaintiff claims and covers items in addition to those used for organized sports.

Further, the Explanatory Notes to the two competing tariff provisions indicate that there are additional criteria that distinguish wheeled items under Heading 9506 from wheeled toys under Heading 9503.  The use of items qualifying as sports equipment or articles for general physical exercise or athletics requires a degree of training and a certain level of skill and athleticism, which are features absent from the use of wheeled toys, but which characterize plaintiff's waveboards.  Additionally, the use of the wheeled toy items does not involve any meaningful risk of injury, an element that is clearly present in the use of the waveboards, nor do wheeled toys provide exercise.  Moreover, wheeled toys all share a common design, in that they each possess an assistive device for the user, which is lacking in the waveboards and the exemplars listed for Heading 9506.  Finally, the court's own examination of the merchandise only reaffirms its conclusion that there can be no doubt that the waveboards resemble skateboards.

Accordingly, the court finds that Customs properly classified the waveboards under HTSUS 9506.99.60 because they are sporting goods or articles for general physical exercise or athletics.  *See Jarvis Clark*, 733 F.2d at 878.

**CONCLUSION**

Based on the foregoing, the court concludes that the correct tariff classification for the Ripple Board and The Wave is subheading 9506.99.60, HTSUS, subject to a duty rate of 4% *ad valorem*.  Judgment will enter accordingly.

Dated:          September 22, 2014
                New York, New York


                                                    _/s/ Richard K. Eaton_____
                                                        Richard K. Eaton

## APPENDIX



**Streetsurfing's "The Wave"**